**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **Britney S.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 17 C 8470** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits ("DIB") and Child's Insurance Benefits
under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, over four years ago.
(Administrative Record (R. ) 210-16). He claimed that he became disabled as of January 18, 1989
(R. 210), due to a learning disability, high blood pressure, asthma, and trouble with his hands. (R.
255). Over the ensuing four years, Plaintiff's application was denied at every level of administrative
review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's
decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit
under 42 U.S.C. § 405(g), and the parties consented to the jurisdiction of a Magistrate Judge
pursuant to 28 U.S.C. § 636( c) on February 14, 2018. [Dkt. #13]. The case was recently reassigned
to me on January 10, 2019. [Dkt. #32]. Plaintiff asks the court to reverse and remand the
Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the
Social Security applicant in an Opinion. Therefore, in the caption, only the plaintiff's first name shall be
listed. Thereafter, we shall refer to Britney S. as the plaintiff.

# I.

Plaintiff was born on January 18, 1981, and was 34 at the time of the ALJ's decision, and just 22 at the time his insured status expired.   (R. 210, 232-33).[2]  He has a Bachelor's Degree,  (R. 45, 256).  His work record is poor.  He has not even worked enough to accumulate anything that can be considered past relevant work. (R. 32).  Out of the last 15 years, he has worked just 19 months: at a retail outlet, at a Social Security office, and at a library. (R. 238-39).  Most recently, he tried to work with the Postal Service, but couldn't get used to driving with the steering wheel on the right side of the vehicle.  (R. 49).  He claims he looks for work every day on the computer, but thinks the gaps in his work history are holding him back.  (R. 52-53).  Plaintiff says there is nothing that would prevent him from doing a simple job.  (R. 54).

Plaintiff has testified that he goes to a doctor regularly, every three months (R. 50), but the medical record in this case is, essentially, non-existent.   Plaintiff concedes as much in his brief and cites to only one piece of evidence from the record. [Dkt. # 21, at 6].  It is a report from August of 1999, setting forth several goals for Plaintiff to meet in high school.  (R. 320).  The report indicates that, despite a learning disability, he was making "very significant progress" at that time. (R. 321). He was given a number of accommodations in classes, including teacher generated notes.

Not surprisingly, given the dearth of evidence, following an administrative hearing – at which Plaintiff, his grandmother, and a vocational expert testified – the ALJ determined Plaintiff was not disabled.  The ALJ found that Plaintiff had a severe impairment: a learning disability.  (R. 26).  His impairments of asthma and hypertension were non-severe.  They were both well-controlled with

---

[2] To qualify for DIB, a claimant must be disabled prior to the expiration of their insured status. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017).

medications. (R. 26). While Plaintiff alleged a problem with his hands – dropping things – there was no medical evidence to support the existence of such an impairment. (R. 27). The ALJ summarized the medical evidence and determined that Plaintiff's impairment caused a mild restriction in activities of daily living; no restriction in social functioning; and a moderate restriction in maintaining concentration, persistence, and pace. (R. 27-28). Because not one area was affected to a marked level, the ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment assumed to be disabling in the Commissioner's listings. (R. 27-29).

The ALJ then determined that Plaintiff could perform "a full range of work at all exertional levels but with the following non-exertional limitations: cannot tolerate concentrated exposure to extreme cold or extreme heat, humidity, dust, odors, fumes, and other pulmonary irritants; can understand, remember, and carry out simple, routine, and repetitive tasks but not at a production rate pace (e.g. no assembly line work); can make simple, work-related decisions; can adapt to changes in a routine work setting; and can interact occasionally with supervisors, and briefly and superficially with coworkers and the general public." (R. 29). Along the way, the ALJ said that he found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 31). The ALJ discussed Plaintiff's minimal medical records and his school records, as well as his testimony and his grandmother's. (R. 30-32). He noted that Plaintiff testified that he could perform simple jobs and that his grandmother said he could perform tasks after repetition of instruction and demonstration. (R. 31, 32).

Next, the ALJ – relying on the testimony of the vocational expert – found that Plaintiff could perform the following jobs that exist in significant numbers in the national economy: packer (5 million jobs), assembler (100,000 jobs), and sorter (90,000 jobs),  Accordingly, the ALJ concluded that Plaintiff was not disabled and was not entitled to benefits under the Act.  (R. 27).

**II.**

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to  build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010).  The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion.  *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result,

the case must be remanded where ALJs fail in their obligations to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

The phrase "logical bridge," seems to have first appeared in *Thompson v. Clifford,* 408 F.2d 154,167 (D.C. Cir. 1968), where Judge Spottswood Robinson said in an administrative case not involving Social Security that: "'Administrative determinations must have a basis in law' and their force depends heavily on the validity of the reasoning in the logical bridge between statute and regulation." But, "there is no magic in words." *Briscoe v. Bank of Commonwealth of Kentucky*, 36 U.S. 257, 347 (1837). As Holmes reminds us "we should think things not words." Holmes, *Law and Science and Science and Law*, 12 Harv.L.Rev. 443, 460 (1889). Thus, Judge Robinson's use of the phrase did not pretend to create some new method of examination of cases or impose some substantive test or requirement for conclusions in a given case.

All *Sarchet* did was to utilize the phrase in a Social Security context. It merely required that in that context – as in all others – the ALJ must articulate reasons for his or her conclusions in order that there could be meaningful appellate review.  But there was nothing new in *Sarchet's* use of the phrase in a Social Security context. It merely recognized the hoary principle that *ipse dixits* alone will not suffice, and that "'reasons means something more than conclusions.'" *United States v. White*, 888 F.2d 490, 495 (7th Cir.1989). Indeed, the insistence that judges not speak *ex cathedra* is an ancient one.  *See e.g.,Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 464 (1964)*; Sandifer v. U.S. Steel Corp.* 678 F.3d 590 (7th Cir. 2012); *E.E.O.C. v. United Airlines,* 693 F.3d 760, 764–765 (7th Cir. 2012); *Sottoriva v. Claps,*617 F.3d 971, 976 (7th Cir. 2010); *Szmaj v. AT & T,* 291 F.3d 955, 956 (7th Cir. 2002); *Milam v. Dominick's Finer Foods, Inc.*, 567 F.3d 830 (7th Cir. 2009)("Yet, an unreasoned decision is easier to upset on appeal than a carefully explained

one.")(Easterbrook, in chambers); *LeBlanc v. Bellsouth Sickness & Acc. Disability Benefit Plan*, 24 F.3d 239 (5th Cir. 1994).

As the court put it in *United States v. Eiselt*, 988 F.2d 677, 680 (7th Cir. 1993): "'Reasons' means something more than conclusions--a distinction important not only to the defendant whose future is at stake but also to the appellate process. ...[W]ithout an adequate understanding of the court's reasoning, we can do little on review to ensure that departure decisions are also applied in a just and consistent manner." 768 F.3d 826, 834 (7ᵗʰ 1985). In short, properly viewed, *Sarchet* and its progeny simply made these basic principles applicable to review of decisions by ALJs in Social Security cases. The Seventh Circuit has called the logical bridge requirement lax. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).

*Sarchet* did not change nor did it pretend to alter in the slightest the basic principle of review that although a written evaluation of each piece of evidence or testimony is not required, the ALJ may not select and discuss only that evidence that favors his or her ultimate conclusion. It is not enough for the government to find enough evidence in the record to establish that the ALJ might have reached the same result had he or she evaluated the evidence as the government's brief does then any error is harmless. That is a doctrine the Seventh Circuit has rejected. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion.").

**III.**

It was Plaintiff's burden to come up with some medical evidence to prove he is disabled. The claimant bears the risk of uncertainty. *Davenport v. Berryhill*, 721 F. App'x 524, 527 (7th Cir. 2018)(claimant bears the burden of establishing the existence of a severe impairment through medical records); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); 20 C.F.R. § 404.1512(c)( "You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."). There simply isn't very much medical evidence at all in the record, let alone any tending to prove disability. *See also infra* at 9.

Moreover, the argument section of Plaintiff's brief is just four paragraphs, slightly more than a single page. [Dkt. # 21, at 6-7]. It borders on the types of skeletal and undeveloped arguments that this court has repeatedly said they disregarded. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018)*; Dalton v. Teva N.A.*, 891 F.3d 687 (7th Cir. 2018); *Puffer v. Allstate Insurance Co.*, 675 F.3d 709, 718 (7th Cir. 2012). The Plaintiff's brief points to Plaintiff's and his grandmother's testimony that he has trouble following directions and records from high school indicating he received special accommodations in classes. While the brief claims that one such record detailed "[d]ifficulties with auditory processing, math and following written and oral instructions" [Dkt #21, at 6], the evidence cited says nothing of the kind. (R. 325). It indicates problems with syntax and spelling. (R. 325). That doesn't disqualify a person from working.

Even though, at fewer than 200 pages, the evidentiary record in this case is slight in comparison with the usual Social Security disability case, judges are not, the Seventh Circuit has said, pigs, hunting for truffles in the record. *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.

1991). If there is evidence to support Plaintiff's case, it's up to his attorney to direct the court to it. *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 297 (7th Cir. 2018); *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 898 (7th Cir. 2018); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n.5 (7th Cir. 1992). Either there isn't any, or counsel couldn't find it. In either case, the ALJ's decision and cannot and should not be overturned. *Cf. King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017)(failure to cite to the record is a basis for the district court to disregard the assertion). The question isn't whether the claimant can point to a few snippets of evidence or even *substantial* evidence that he is disabled. The question we consider on review is whether the final agency finding—here the ALJ's finding—is supported by substantial evidence. *Scheck*, 357 F.3d at 699. If it is, as it is here, it must be upheld even if an alternative position is also supported by substantial evidence. *Id.*; *Schmidt v. Astrue,* 496 F.3d 833, 843-44 (7th Cir. 2007).

Plaintiff argues that "[i]t is impossible to tell whether the vocational expert's testimony rested on a reliable basis because the ALJ did not build the logical bridge in relying on that testimony." Plaintiff contends that the ALJ failed to fully and fairly develop the record and that this was prejudicial to Plaintiff because if the ALJ had incorporated all of Plaintiff's limitations into the hypothetical to the vocational expert, "it is unlikely her response would have identified a significant number of jobs in the national economy." [Dkt. # 21, at 7]. According, to Plaintiff, the ALJ should have included "significant limitations including difficulties with following instructions, paying attention, and needing to have directions repeated multiple times." [Dkt. # 21, at 6].

Plaintiff's brief cites no case law regarding an ALJ's duty to fully and fairly develop the record. [Dkt. # 21, at 7]. Such arguments are generally deemed waived. *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016)(". . . perfunctory and undeveloped arguments, and arguments that are

8

unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." ). Still – and, importantly – while an ALJ is under an obligation to develop a "full and fair record," this obligation is not limitless. *Thomas v. Colvin*, 745 F.3d 802, 807–08 (7th Cir. 2014). As the Seventh Circuit has recently explained:

> . . . [Plaintiff] had the burden to prove disability. 20 C.F.R. § 404.1512(c); *see also Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Even a pro se litigant . . . bears responsibility for developing the record, *see Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006). And nothing prevented him from asking to update records to support his claim. *See Nelms* [*v. Astrue*, 553 F.3d 1093,] at 1098 & n.1 [(7th Cir. 2009)] (evaluating claimant's additional records for limited purpose of demonstrating prejudice).

*Wilson v. Berryhill*, 737 F. App'x 286, 290 (7th Cir. 2018).

Plaintiff said he saw a doctor regularly and also indicated, at one point, that he was seeing a psychiatrist for his learning disability. But he didn't name the psychiatrist (R. 308), and the Agency appears to have contacted all the health care providers Plaintiff let them know about. That yielded records of normal/negative blood tests, a notice that records were so old they had been destroyed, or that there was no history of treatment. (R. 449-454, 460-61, 468-69). There was nothing to suggest Plaintiff is unable to work.

While Plaintiff was not represented by counsel at the hearing, he has been represented here in the district court and, the question remains, what additional evidence would have made a difference here? What more ought the ALJ, or the Agency, have done? All Plaintiff's skeletal brief provides is hopeful speculation. But, even if the ALJ did fail in his duty to fully and fairly develop the record, mere speculation that there might be some evidence out there does not necessitate a remand of an ALJ's decision. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017); *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994).

Unfortunately, even the scant evidence Plaintiff cites in support of the significant limitations he claims should have been included in the ALJ's hypothetical – pages 65 and 35 [Dkt. #21, at 6] – does nothing to advance his theory. Indeed, it is not evidence at all, but a page from the exhibit table of contents (R. 35), and the title page from the hearing transcript. (R. 65). That would appear to be an error in the brief writing; but, in any event, it's not up to the court to search the record for evidence to support Plaintiff's arguments. *Johnson v. Advocate Health & Hospitals Corp.*, 892 F.3d 887 (7th Cir. 2018); *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609 (7th Cir. 2008). That's his attorney's job. *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . .")

All the ALJ had to go on was some testimony from Plaintiff and his grandmother. On the one hand, Plaintiff testified that day to day, "there are *some questions* [he] do[esn't] understand." (R. 53)(Emphasis supplied).[3] He did not amplify on or explain this conclusion. Significantly, he also said there was nothing to prevent him from doing a simple job; he'd just have to learn it, follow instructions and ask questions. (R. 54). He said he would be able to remember simple instructions and remember how he was told to do it. (R. 54). Thus, the ALJ quite rationally determined that, overall, Plaintiff could follow instructions well enough to "carry out simple, routine, and repetitive tasks but not at a production rate." (R. 29). Understandably and properly, that's the hypothetical the ALJ presented to the vocational expert. The simplicity of the work accounted for alleged trouble with instructions; the repetitive nature of the work accounted for execution of tasks over an extended time, and the elimination of quotas accounted for trouble maintaining a consistent pace. *Cf.*

---

[3] Plaintiff cites this testimony as saying "[h]e had to be told three, four times to do something." [Dkt. # 21, at 6 (citing R. 53)]. As with other citations to the record in Plaintiff's brief, this one is not accurate. And, in any event, the testimony does not support the conclusions made by his lawyer.

*Radosevich v. Berryhill*, No. 17-3326, 2019 WL 286172, at *3 (7th Cir. Jan. 22, 2019);*Warren v. Colvin*, 565 F. App'x 540, 545 (7th Cir. 2014)*.* The hypothetical to the vocational expert needed only to account for all limitations supported by medical evidence in the record. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Given the dearth of medical evidence, the ALJ gave Plaintiff the benefit of the doubt. The ALJ did all he had to do, and perhaps more.

It bears repeating that an ALJ – like any factfinder – did not have to accept uncritically whatever the plaintiff and his witnesses said. Indeed, to have done so would have constituted an abdication of the ALJ's responsibility to decide who was telling the truth and who was not – who was exaggerating and who was not, and scores of like questions. Reviewing courts ought not second guess the trier of fact's credibility judgments. *United States v. Jones*, 872 F.3d 483, 489 (7th Cir. 2017). At least not without compelling reasons. The same rule applies to an ALJ's credibility judgment, which will not be disturbed unless it is "patently wrong." *McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018); *Britt v. Berryhill*,889 F.3d 422 (7th Cir. 2018); *Imse v. Berryhill*, 752 F. App'x 358, 362 (7th Cir. 2018). It must not be forgotten that ALJ credibility determinations are given deference because ALJs are in a special position to hear, see, and assess witnesses. *Colvin, 759 F.3d 811, 815* (7th Cir. 2014).

In any event, what has been recounted is all the Plaintiff has to say about the ALJ's decision which, again, given the record, really couldn't have gone any other way. Any other arguments Plaintiff might have made but did not are deemed waived. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013); *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Finally, plaintiff chose not to file a reply brief, although he had until October 24, 2018, to do so. [Dkt. #27]. Thus, he never

responded to any of the Commissioner's well-reasoned points, and he has thus waived the opportunity to do so. N.D.Ill. Local Rule 78.3 ("Failure to file a reply memorandum within the requisite time shall be deemed a waiver of the right to file."); *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 595 (7th Cir. 2017)("Failure to respond to an argument generally results in waiver . . . ."). *See also United States v. Thompson*, 286 F.3d 950, 970 (7th Cir. 2002)("He did not even file a reply brief to challenge the evidence the government laid out in its response brief. . . .").

## CONCLUSION

For the foregoing reasons, the ALJ's decision is affirmed. The Commissioner's motion for summary judgment [Dkt. #28] is granted, and the plaintiff's motion for summary judgment [Dkt. #20] is denied.

ENTERED:_____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/8/19